Earl R. MARSHALL, Sheriff of Greenup County, Kentucky, Appellant,

v.

COMMONWEALTH of Kentucky, By and Through Hon. Edward B. HATCHETT, Jr., Auditor of Public Accounts, Appellee.

No. 1998–CA–003192–MR.

Court of Appeals of Kentucky.

June 2, 2000.

Phillip Bruce Leslie, McBrayer, McGinnis, Leslie & Kirkland, Greenup, Kentucky, for appellant.

Edward B. Hatchett, Jr., Auditor of Public Accounts, Robert E. McBeath, Frankfort, Kentucky, for appellee.

Anne E. Keating, Kentucky Department of Education, Frankfort, Kentucky, J. Stephen Kirby, Kentucky School Boards Association, Frankfort, Kentucky, for amicus curiae.

BEFORE: GUIDUGLI, JOHNSON, and KNOPF, Judges.

*OPINION*

KNOPF, Judge:

This is an appeal from a declaratory judgment by the Greenup Circuit Court. The sole issue before this Court is whether interest earned on school tax funds placed in an interest bearing checking account (a "NOW" account) are deemed "investment earnings" under KRS 134.140(3)(b) and thus must be paid to the county school districts; or whether the interest may be retained by the Sheriff of Greenup County and used for the office's legitimate operating expenses. We find that the trial court correctly held that the interest earned must be paid to the county school districts. Hence, we affirm.

The parties to this action agreed to a stipulation of facts which we will briefly summarize. The appellant, Earl R. Marshall, was the duly elected and acting sheriff of Greenup County, Kentucky until December 31, 1998. As part of his duties as sheriff, Marshall served as tax collector for all state, county and district taxes, including school taxes, within the county. KRS 134.140 and 160.500. Each month the sheriff is required to pay the amount of school taxes collected during the previous month to the depository of the district boards of education within the county. KRS 160.510. Until such distribution is required, KRS 134.140 permits the sheriff to invest any tax revenues held in his possession, subject to the provisions of KRS 66.480. However, the sheriff must pay to the board of education any part of investment earnings for the month which is attributable to the investment of school taxes. The sheriff is permitted to withhold up to 4% of the investment earnings as a fee for administering the investment fund. KRS 134.140(3)(b).

Pursuant to the statutory scheme, Sheriff Marshall collected the 1993 and 1994 school taxes within Greenup County. Prior to distributing the tax monies to the school districts, he deposited the funds into several bank accounts. Some of the funds went into interest bearing time deposit accounts (certificates of deposit, or "CDs"), and some went into a NOW account. Sheriff Marshall paid to the school districts all school taxes and investment income from the CD account. He also paid over all school tax funds held in the NOW account. However, he retained the interest earned on those funds in the NOW account.

The appellee, Commonwealth of Kentucky by and through Edward B. Hatchett, Jr., Auditor of Public Accounts (the Public Auditor), is empowered to audit annually the books, accounts and papers of all sheriffs within the Commonwealth of Ken-

tucky. KRS 43.070. In lieu of an audit conducted by the Public Auditor, Sheriff Marshall exercised his option under KRS 64.810 to employ a certified public accountant to audit the books, accounts and papers of his office. These audits must be done in accord with certain standards promulgated by statute. KRS 43.070, 43.075 and 64.810. The certified public accountant performed the tax settlement audit and submitted a report to the Public Auditor for review and final approval.

During the Public Auditor's review of that report, a dispute arose between the Public Auditor and the certified public accountant over the proper treatment in the audit of interest earned on tax money collected and deposited by the Sheriff concerning the interest earned in the CDs and the NOW account. Sheriff Marshall and the certified public accountant maintained the position that the NOW account interest was not required to be distributed to the school districts in the same manner as the interest from the certificates of deposit. Rather, they argued that the interest earned by the NOW account could be retained and used for the legitimate expenses of the sheriff's office. On the other hand, the Public Auditor argued that all interest earned on school tax funds constitutes investment earnings and must be distributed to the school districts.

Failing to reach a resolution of this dispute, Sheriff Marshall filed an action in the Greenup Circuit Court on October 9, 1997, seeking a declaration of rights involving the disposition of earnings generated by the NOW account. The trial court denied the Public Auditor's motion to join as necessary parties the three school systems who had a financial interest in the litigation.[1] However, the trial court did enter an order stating that the school districts could permissively join the case pursuant to CR 20.01. None of the three school systems chose to join the action.

The case was submitted to the trial court based upon the stipulation of facts and upon briefs filed by both parties. Sheriff Marshall also submitted the deposition of C. Ronald Christmas, an attorney and president of Kentucky Bank & Trust. After a consideration of these materials and the applicable law, the trial court found, in part, as follows:

This entire case rests on the issue of when an interest-bearing account becomes an investment. If, the NOW account is considered not an investment, then the Sheriff can use the investment or earnings to pay his legitimate office expenses. If the earnings from the NOW account are considered an investment, then the Sheriff must turn these earnings over to the local school districts.

As Mr. Ron Christmas testified in his deposition, NOW accounts pay incremental interest and certainly would not be considered investments. (Christmas deposition, p. 13). Few people will argue that a NOW account is a good investment if one is seeking the highest return possible. Mr. Christmas pointed out that banks consider NOW accounts demand deposit accounts as opposed to investment accounts. (Christmas deposition, p. 14–15). When demand deposit accounts begin to earn interest, how high must the yield be before one considers the demand deposit account an investment? Would bankers consider a NOW account which earned two percent (2%) interest an investment, or perhaps three percent (3%), or four percent (4%) or five percent (5%) or perhaps even seven or eight percent (7 or 8%). At what point would the NOW account cease to be a demand deposit account and be considered an investment for banking purposes? Mr. Christmas never answered this question for the purpose of handling tax money collected by the sheriff. He only answered it in the

1. These three school systems are the Greenup County School District, Raceland–Worthing-   ton Independent School District and the Russell Independent School District.

context of the banking world. How does one know where to draw the line?

Legislatures must write statutes in such a way that the ordinary, prudent, reasonable person will be able to understand what is and is not a violation of the law. Thus, in order to withstand an unconstitutional challenge for vagueness, the Legislature must write a law such that one can determine with reasonable certainty from the language used whether the contemplated conduct would amount to a violation. *Commonwealth v. Foley*, 798 S.W.2d 947 (Ky., 1990). The question becomes what standard do sheriffs use to determine when an "interest-bearing account" ceases to be an "investment", and it becomes a demand deposit account? In other words, how high must the rate of return become before a NOW account loses its identity as a demand deposit account and it becomes an investment? A sheriff needs a standard he can answer these questions with reasonable certainty. If the Court declared that a NOW account is not an investment because of a minimal return, then the sheriff would still have to ask the question—How high does the rate of return have to be before the NOW account (demand deposit account) is considered an investment? The sheriff would be left with an amorphous sliding rule standard incapable of reasonable certainty.

The Kentucky Constitution is the highest law of the Commonwealth. It creates the standard when it states that "... any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common school, and to no other purposes." *Kentucky Constitution* § 184. The Constitution is clear that taxes or income generated by taxes, "... shall be appropriated to the common school, and to no other purpose." Since the Constitution is the highest law of the Commonwealth, then its provisions take precedent [sic] over any statute. Thus, the people of the Common-

wealth created the standard of how to handle the income generated by the taxes if the money is to be earmarked for education. It must be paid to the schools. It doesn't matter how slight the earnings may be, if generated from taxes, then the earnings must be paid back to the schools. This absolute standard becomes one all sheriffs can apply with reasonable certainty. Therefore, all earnings generated by taxes earmarked for education must be paid to the local school districts without regard to the rate of return of the account, regardless of the type of account in which they are deposited, except for the statutory limit of four percent (4%) authorized by KRS 134.140(3)(b) to be withheld by the sheriff for the purpose of administering the investment fund.

This approach is the only way that an absolute standard can be established sufficiently clear for all sheriffs to understand and apply with reasonable certainty. It doesn't depend on current financial market conditions, yet it remains consistent with all statutory and constitutional provisions.

*Declaratory Judgment Opinion and Order,* November 30, 1998, pp. 5–7.

Sheriff Marshall now appeals to this Court. The primary question before this Court is whether interest earned on a NOW account constitutes investment income, which the sheriff must pay to the local boards of education. We agree with the trial court that the statutes are unclear on this point. The parties agree that this question is a matter of first impression in the appellate courts of the Commonwealth. Furthermore, the trial court expressly found that Sheriff Marshall has acted in good faith at all times. The controversy arises from a legitimate dispute over the interpretation of the applicable statutes and the constitutional provision. With these facts in mind, we now proceed to the matter at issue.

KRS 134.140(3)(a) & (b) provide in their entirety:

(a) The sheriff, except in urban-county governments, may, and at the direction of the fiscal court shall, invest any tax revenues held in his possession from the time of collection until the time of distribution to the proper taxing authorities pursuant to KRS 134.300, 134.320 and 160.510. Investments by the sheriff shall be restricted to those permitted by KRS 66.480.

(b) At the time of his monthly distribution of taxes to the district board of education, the sheriff shall pay to the board of education that part of his investment earnings for the month which is attributable to the investment of school taxes, but this subsection shall not be construed to prohibit the sheriff from obtaining his expenses not to exceed the rate of four percent (4%) of the earned monthly investment income for the administration of this investment fund.

Sheriff Marshall hinges his argument on the portion of KRS 134.140(3)(b) which provides that "the sheriff shall pay to the board of education that part of his investment earnings *which is attributable to the investment of school taxes,* . . . ." He points out that NOW accounts are not listed in KRS 66.480 as a permissible investment. Sheriff Marshall further relies upon the testimony of Ron Christmas, who stated that the rate of return on NOW accounts are so low that banks do not consider them to be investments. As a result, Sheriff Marshall contends that not all interest income constitutes "investment earnings" for purposes of KRS 134.140(3)(b).

This argument has some appeal. Since sheriffs must pay over school tax revenues on a monthly basis, it is reasonable that a certain amount of these funds must be maintained in a checking account for disbursement. Such accounts are not truly "investments", but they are maintained as part of the normal performance of the sheriff's duties as tax collector. The de-velopment of interest-bearing checking accounts, such as the NOW account, has created the potential for interest earned on these tax funds. The General Assembly obviously did not contemplate this possibility when it enacted KRS 134.140 in 1982, because NOW accounts did not then exist. Yet we also note that the General Assembly has not considered NOW accounts as an investment in its most recent versions of KRS 66.480.

We agree with the trial court that the banking industry's characterization of NOW accounts as deposits rather than investments is not controlling for purposes of KRS 134.140(3)(b). As pointed out by the trial court, Mr. Christmas's definition of "investment" posed practical, as well as constitutional problems. Nonetheless, the statutory scheme remains problematic because the legislature failed to define what it meant by the term "investment earnings." Therefore, we must look to the broader purposes behind the statutes themselves to resolve this issue.

In considering this question, we note that the facts in this case are analogous to those presented in *Phillips v. Washington Legal Foundation,* 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). In *Phillips,* the United States Supreme Court considered the ownership of interest earned by an "Interest on Lawyer Trust Account" (IOLTA). The Court noted that the development of NOW accounts created the possibility that client funds held in trust by an attorney might earn interest. Although the interest on individual client accounts is usually nominal, IOLTA programs generated considerable revenue by allowing attorneys to combine individual client accounts. The interest paid on these accounts was deposited by participating attorneys into an account for the support of public legal services. *Id.,* 141 L.Ed.2d at 181–183, 118 S.Ct. 1925.

A Texas attorney and a conservative legal foundation challenged the Texas IOLTA program, arguing that the pro-

gram violated the Takings Clause of the Fifth Amendment to the United States Constitution. The United States Supreme Court agreed, holding that the interest income generated by funds held in IOLTA accounts is the "private property" of the owner of the principal. *Id.*, 141 L.Ed.2d at 188, 118 S.Ct. 1925. Since under Texas law, client funds held by an attorney remain the private property of the client until earned by the attorney, the Supreme Court concluded that any interest earned on those funds also remained the private property of the client.

■ Since both the Greenup County Sheriff and the local boards of education are public entities (and the funds at issue are school tax revenues), the Fifth Amendment prohibition against taking of private property for public purposes is not applicable in this case. Nonetheless, the analysis by the Supreme Court is instructive. Pursuant to KRS 134.140(3), the local boards of education are entitled to receive all school tax funds collected by the sheriff, except for the 4% commission. Likewise, *Ky. Const.* § 184 designates that all sums produced by school taxes shall be appropriated to the common schools and for no other purpose.[2]

Under the statutory scheme, the local school boards are the beneficial owners of the principal generated by school tax revenues. Section 184 of the Kentucky Constitution emphasizes the exclusive right of the boards of education to the tax revenues. The sheriff essentially holds these funds as a trustee. KRS 134.140(3)(b) allows the sheriff to recoup his expenses for his administration of the investment fund at a rate not to exceed 4% of the earned monthly investment income of the fund.

We conclude that this commission is the sole basis under which sheriffs are permitted to receive payment for their administration of school tax fund investments.

■ If the constitutional directive of Section 184 were not so clear, we might be inclined to agree that the interest generated from school tax funds held in a NOW account could be retained for legitimate expenses of the sheriff's office. The statutory scheme is not clear that this income would be otherwise considered as "investment earnings" under KRS 134.140(3)(b). We urge the legislature to specifically address this gap in the statute. In the meantime, we are convinced that the Kentucky Constitution requires that all of the principal and income earned from school tax revenues, except for the sheriff's commission provided by KRS 134.140(3), is to be distributed to the local boards. The interest earned by the NOW account is clearly income earned from the proceeds of the school tax funds, to which the local school boards are entitled.

Accordingly, the judgment of the Greenup Circuit Court is affirmed.

GUIDUGLI, Judge, CONCURS.

JOHNSON, Judge, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

JOHNSON, Judge, concurring in result:

While I concur with the result reached by the Majority Opinion, I choose to write separately to express my opinion that the Auditor of Public Accounts is correct in his position that the language of KRS 66.480(1)(d) is determinative. KRS 66.480(1) states in relevant part that the local governmental unit "may invest and

---

2. Sheriff Marshall also contends that the trial court erred in applying *Ky. Const.* § 184, because that section only deals with the disposition of income generated from school bonds. We disagree. Section 184 does provide for the initial bond of the Commonwealth in favor of the board of education. However, § 184 goes on to provide: "The interest and dividends of said fund, *together with any sum*

which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose." *(Emphasis added).* Section 184 applies equally to interest and dividends earned by the bond fund and by public school taxes. *See, Board of Education of Calloway County School District v. Williams*, Ky., 930 S.W.2d 399 (1996).

reinvest money subject to its control and jurisdiction in: ... (d) Certificates of deposit issued by or *other interest-bearing accounts of any bank* ..." [emphasis added]. While a "NOW" account is not specifically listed in KRS 66.480 as a permissible investment, I believe the plain wording of KRS 66.480(1)(d) requires a determination that a "NOW" account is an "interest-bearing account[ ] of any bank." Since the plain language of KRS 66.480(1) allows the local government unit to "invest" the "money subject to its control," I must conclude that the placement of the school tax receipts in the interest-bearing "NOW" account is an investment.